J. Henk Taylor (016321)
**RYAN RAPP & UNDERWOOD, P.L.C.**
3200 North Central Avenue, Suite 2250
Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
E-Mail: htaylor@rrulaw.com

Jeffrey M. Eilender (*pro hac vice to be submitted*)
Bradley J. Nash (*pro hac vice to be submitted*)
Joshua Wurtzel (*pro hac vice to be submitted*)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Plaintiff Resource Recovery Corporation*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Resource Recovery Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Inductance Energy Corporation; and Wyo Tech Investment Group, LLC,<br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Resource Recovery Corporation ("RRC"), by and through its counsel, asserts the following causes of action against Defendants Inductance Energy Corporation ("Inductance") and Wyo Tech Investment Group, LLC ("Wyo Tech"), and alleges as follows.

This action is related to the interpleader action captioned *Wells Fargo Bank, N.A. v. Wyo Tech Investment Group, LLC, et al.*, Case No. 17-cv-4140-DWL (the "Wyo Tech Interpleader Action"), which is pending in this District before the Honorable Dominic W. Lanza.

## NATURE OF ACTION

1. This action arises out of a fraud and theft that Dennis Danzik ("Danzik"), the former CEO of an Arizona company called RDX Technologies Corporation ("RDX"), committed against Resource Recovery Corporation and CWT Canada II Limited Partnership (collectively, the "CWT Parties")—which resulted in a $7 million judgment and criminal and civil citation of contempt against him and RDX by a New York State court.

2. As explained below, Danzik stole millions of dollars in tax credits held by RDX in trust for the CWT Parties, and the court in New York entered a more-than $7 million judgment against him and RDX based on this loss and damages from other frauds by Danzik and RDX against the CWT Parties—which was part of a larger scheme through which Danzik defrauded RDX itself out of tens of millions of dollars by claiming false fees and expenses, and by simply looting the company.

3. The New York court held Danzik and RDX in criminal and civil contempt, and issued a warrant for Danzik's arrest for refusing to return the stolen money. But Danzik has not surrendered to New York authorities, and remains at large.

4. Just 15 days after the New York court entered a more-than $7 million

judgment against him and RDX, Danzik entered into an agreement with Wyo Tech, under which Danzik purported to sell valuable intellectual property—specifically, an "Earth Engine" that supposedly harnesses vast amounts of energy using magnets (the "Magnet Intellectual Property")—to Wyo Tech for no consideration.

5. But this was a sham agreement. While Danzik and Wyo Tech wrote in this agreement that the Magnet Intellectual Property had a value of "zero," Danzik and Wyo Tech raised at least **$16 million** from investors based solely on the strength of the Magnet Intellectual Property—which the *Wall Street Journal* recently described as a technological breakthrough that previously "eluded great minds from Leonardo da Vinci to electrical pioneer Nikola Tesla," and as a discovery that "would rank with the harnessing of steam, electricity, and the atom."

6. Alternatively, RDX or Danzik's company that Danzik used to steal the CWT Parties' tax credits, Danzik Applied Sciences, LLC ("DAS"), owned the Magnet Intellectual Property, and Danzik caused the transfer of the Magnet Intellectual Property from them to Wyo Tech.

7. Wyo Tech did not pay Danzik, RDX, or DAS any consideration for the Magnet Intellectual Property, and falsely stated that it was worth "zero"—likely in anticipation of a fraudulent-transfer claim.

8. And critically, at the time of the transfer, the CWT Parties had judgments against Danzik and RDX for theft of the CWT Parties' tax credits, and had a claim against DAS—which is pending in a separate federal action in this District—for this same theft. Further, at the time of the transfer, Danzik, RDX, and DAS were insolvent, or rendered insolvent by this transfer.

9. Wyo Tech then purported to license the Magnet Intellectual Property to Inductance to commercialize it, and Inductance purports to be doing so.

10. Upon information and belief, Wyo Tech and Inductance—which are both run by Danzik, his family members, and his cronies—knew that the Magnet Intellectual Property was owned by Danzik, or alternatively, RDX or DAS, and further knew that the CWT Parties had claims against all three of them, and further knew that the transfer was taking place for inadequate (indeed, no) consideration and that Danzik, RDX, and DAS were insolvent.

11. This transfer was thus fraudulent under A.R.S. § 44-1005 as to the CWT Parties, which had a then-present claim against Danzik, RDX, and DAS.

12. Accordingly, any transfer of the Magnet Intellectual Property by Danzik, RDX, or DAS to Wyo Tech and Inductance should be set aside, and Wyo Tech and Inductance are jointly and severally liable to RRC. And during the pendency of this action, Wyo Tech and Inductance should be enjoined from taking any action with regard to the unlawfully-transferred Magnet Intellectual Property, and should be required to disgorge any funds or anything of value that they have received (including any investments) based on this purloined intellectual property.

## THE PARTIES

13. Plaintiff RRC is a New York corporation, with its principal place of business in New York. RRC holds all the CWT Parties' interests in their judgment against Danzik and RDX.

14. Upon information and belief, Defendant Inductance is a Wyoming corporation, with its principal place of business in Maricopa County, Arizona.

15. Upon information and belief, Defendant Wyo Tech is a Wyoming limited liability company, with its principal place of business in Maricopa County, Arizona. For purposes of diversity jurisdiction, as a limited liability company, the citizenship of Wyo Tech is the citizenship of its members. Upon information and belief, none of Wyo Tech's

members are citizens of New York.

## JURISDICTION AND VENUE

16. The Court has personal jurisdiction over Defendants under Fed. R. Civ. P. 4(k)(1)(A) and Ariz. R. Civ. P. 4.1 and 4.2.

17. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1), because there is diversity of citizenship and the matter in controversy exceeds $75,000.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), because all Defendants reside in this District, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to RRC's claims occurred in this District.

## FACTUAL ALLEGATIONS

**A. The New York Court Enters Judgment Against Dennis Danzik and RDX for Defrauding the CWT Parties Out of Millions in Tax Credits**

19. In 2013, the CWT Parties sold a renewable energy company called Changing World Technologies, L.P. ("CWT") to RDX. Danzik was RDX's CEO. CWT was a holding company for and the sole member of a Delaware LLC called Renewable Environmental Solutions, LLC ("RES").

20. As part of a federal subsidy program, RES was entitled to millions of dollars in tax credits (the "Tax Credits") from the United States Treasury. And since RES had no income, the United States Treasury affirmatively paid the Tax Credits to RES.

21. Since RES earned millions of dollars of the Tax Credits before the CWT Parties sold RES's parent company, CWT, to RDX that had not yet been paid at the time of the sale (this was due to a late, retroactive renewal of the subsidy program), in the sale agreement between the CWT Parties and RDX, the parties agreed that RDX—as the new owner of CWT, and thus RES—would remit these Tax Credits to the CWT Parties.

-4-

22. But after receiving the Tax Credits that RES earned before the sale of CWT to RDX, and despite the parties' agreement that RDX would remit these Tax Credits to the CWT Parties, Danzik and RDX refused to remit over $5 million of Tax Credits to the CWT Parties. Instead, Danzik and RDX transferred the Tax Credits to Danzik himself, Danzik's wife Elizabeth, and companies that Danzik or his wife controlled, including DAS.

23. Specifically, Danzik did this by submitting bogus invoices to RDX from DAS and then paying DAS on those invoices. And Danzik also opened a secret bank account at Hometown Bank in Missouri in which he deposited $1.6 million of the Tax Credits, kept this money off RDX's books and thus outside the purview of RDX's auditors, and then transferred this money to DAS and also to his wife.

24. Further, Danzik also stole additional assets from RDX, and transferred them to himself, his wife, and companies he controlled, including DAS—or he sold RDX's assets for parts, and then transferred the proceeds to himself, his wife, and companies he controlled, including DAS. Indeed, RDX—a once publicly-traded company—now appears to be a shell, with almost all of its assets stripped and stolen by Danzik.

25. Extensive litigation over this theft ensued in New York State court. But on November 4, 2015, because of what the New York court held were "multiple extensive, willful and contumacious violations of this court's discovery orders," the New York court struck Danzik's and RDX's defenses. And on August 4, 2016, the New York court granted the CWT Parties' motion for a default judgment. A copy of the New York court's August 4, 2016 order is attached as Exhibit A.

26. On September 7, 2016, the New York court entered judgment in favor of the CWT Parties and against Danzik and RDX for $7,033,491.13—which included the stolen Tax Credits, amounts due from a separate fraud involving another Danzik entity, and

interest. A copy of the September 7, 2016 judgment is attached as Exhibit B.

**B.     The New York Court Holds Danzik and RDX in Criminal and Civil Contempt**

27.     On June 3, 2016, after a four-day hearing, the New York court also held Danzik and RDX in criminal and civil contempt for their violation of additional court orders. Specifically, the court held that Danzik (a) deliberately violated an attachment order directing him to return the stolen Tax Credits, and a TRO prohibiting RDX from transferring funds without court permission; and (b) committed a "fraud on the court" by lying under oath, suborning perjury by another witness, and altering documents to hide his theft. A copy of the New York court's June 3, 2016 order is attached as Exhibit C.

28.     In holding Danzik and RDX in contempt, the New York court held that the evidence at the contempt hearing showed "beyond a reasonable doubt, and certainly by clear and convincing evidence," that Danzik "stole all of the money" from the Tax Credits. The court also held that Danzik "admit[ted] his noncompliance with the Attachment Order," which required him to restore the stolen funds, and that his excuse for his noncompliance—that he lacked the funds to comply—was a "lie." Indeed, the New York court held that Danzik transferred the Tax Credits to "himself, his family members and their businesses," and then used that money to pay "personal expenses."

29.     The New York court also held that Danzik violated the TRO by creating a "sham" company, called M2R Licensing, LLC, for the purpose of "evading the court's orders and defrauding RDX's creditors." Indeed, the New York court held that "[a]fter having deposited the tax credit funds in a new, secret Hometown bank account, Danzik made sure to invoice all of RDX's clients with M2R invoices so revenue would be received by M2R instead of RDX," and changed invoices to existing RDX customers to come from M2R instead, "*before* M2R was even formed." The purpose of this scheme was for RDX to then claim that it "had no funds to comply with the Attachment Order."

But according to the New York court, "that excuse" was a "fraud on the court."

30. Further, according to the New York court, Danzik is the "epitome of a recalcitrant, contemptuous, and incorrigible litigant," who "lie[d]," "deliberately did not disclose" relevant records, "coerced" a witness into "submitting false affidavits," and "perjured himself before a Canadian bankruptcy court."

31. After holding Danzik and RDX in contempt, and giving them an opportunity to purge their contempt by restoring the stolen tax credits (which they did not do), the New York court issued a commitment order and an arrest warrant for Danzik, copies of which are attached as Exhibits D and E.

32. Danzik has since fled New York. If he returns, he will be arrested and imprisoned.

33. The CWT Parties have also been attempting to have Danzik arrested wherever he is, and extradited to New York. On November 8, 2017, the New York court issued a revised commitment order and arrest warrant that would enable New York law enforcement to enter the warrant into the National Crime Information Center database ("NCIC")—a critical step in arranging for Danzik's arrest and extradition to New York. Copies of the New York court's revised commitment order and arrest warrant are attached as Exhibits F and G.

34. Shortly after the New York court issued the revised commitment order and arrest warrant, law enforcement in New York entered the warrant into NCIC.

**C. Danzik Transfers, or Causes the Transfer of, the Magnet Intellectual Property to Wyo Tech for No Consideration**

35. In 2012, Danzik created the Magnet Intellectual Property, which purported to develop a way to alter the polarity of a magnet by making one pole stronger than the other. *See* https://ie.energy/earth_engine/. This supposedly created an "Asymmetrical

Magnet array," and thus created a unique energy source called "Magnetic Propulsion." *Id.* The result, according to Danzik, was the "world's first and only power source propelled by Asymmetrical Magnetic Propulsion," which could "generate electricity, operate liquid pumps, air compressors, and other mechanical devices 24 hours a day, 365 days a year," and which is "fully independent of the power grid and offers significant cost savings over other technologies." *Id.*

36. The Magnet Intellectual Property is based on and includes five "technological innovations," which—upon information and belief—were all created and owned by Danzik in or around 2012:

- *The Danzik Array – the Engine Design.* This is a "special arrangement of permanent magnets" that supposedly has the ability to "propel solid objects solely using permanent magnets by breaking the magnetic field at the point of maximum velocity."

- *Asymmetrical Magnets – the Fuel Source.* This is "extruded 'solid state' fuel" that is "accelerated in a unique way to cause spin" and make the engine that is part of the Magnet Intellectual Property run.

- *Magnetic Lens – the Throttle.* This creates a "near complete 'break' in any magnetic field without the Lens itself becoming magnetic in the process," and "enables the precision control of the magnetic entropy (fields) required for" the engine to run.

- *Flywheel – the Driveshaft.* These are "highly complex composite pieces of equipment made up of more than 200 components that allow for magnet fuel to be integrated within the flywheel without the flywheel itself becoming magnetic." Two of these "heavy masses" are then "spun" by the "magnetic field acceleration in a counter-rotating fashion at super-

-8-

high intersect speeds," and the "powerful inertia is then transferred to three phase alternators where the generated power can be delivered to power consumption or storage devices."

- *"Z" Drive – Leveraged Power.* This technology "allows for the transfer of inertia from the flywheel to multiple smaller flywheels without the need for drive belts, gear, chains or transmissions," and delivers "over seven hundred pounds per square inch of force."

Ex. H (Inductance Earth Engine Technical Overview).

37. As explained below, between 2012 and 2016, the Magnet Intellectual Property was owned by either (1) Danzik, (2) RDX, or (3) DAS. But in September 2016—just days after the New York court entered judgment against him—Danzik caused the Magnet Intellectual Property to be transferred to Wyo Tech for no consideration.

### i. **Danzik Owned the Magnet Intellectual Property**

38. On September 22, 2016, Danzik executed an Agreement to Release Intellectual Property Rights (the "Danzik Release Agreement") with Wyo Tech, a copy of which is attached as Exhibit I. In this agreement, Danzik purported to own the Magnet Intellectual Property himself, and purported to transfer it to Wyo Tech for no consideration.

39. Critically, this transfer occurred only *15 days* after the New York court entered judgment against Danzik, so at the time of this transfer, Danzik was insolvent, or became insolvent as a result of the transfer.

40. Danzik did not receive any consideration in exchange for this transfer.

41. Indeed, in the Danzik Release Agreement, Danzik and Wyo Tech stated that the Magnet Intellectual Property had a current value of "zero," because it had not been "fully developed, tested or commercialized in any way." Ex. I.

-9-

42. But this was a sham, and upon information and belief, Danzik and Wyo Tech included this in the Danzik Release Agreement to try to refute a fraudulent-transfer claim.

43. Contrary to this statement in the Danzik Release Agreement, Wyo Tech and Danzik raised at least $16 million on the strength of the Magnet Intellectual Property—which, as explained above, the *Wall Street Journal* recently described as a technological breakthrough that previously "eluded great minds from Leonardo da Vinci to electrical pioneer Nikola Tesla," and as a discovery that "would rank with the harnessing of steam, electricity, and the atom."

    **ii.**    **Alternatively, RDX Owned the Magnet Intellectual Property**

44. In its 2014 consolidated financial statements, RDX, a "water treatment and energy technology company," disclosed that it had acquired from Danzik-related companies over $17.6 million worth of intellectual property. In the alternative to the allegations above, this intellectual property included the Magnet Intellectual Property. A copy of these consolidated financial statements is attached as Exhibit J.

45. As disclosed in RDX's consolidated financial statements, Danzik appointed himself "trustee of the trade secrets" owned by RDX, so RDX disclosed very little about the specific intellectual property it owned, and Danzik had complete control over it.

46. Between 2012 and 2014, Danzik looted all RDX's assets, and RDX became a non-operational shell. And critically, because Danzik maintained complete control over all RDX's intellectual property, no one other than Danzik could meaningfully determine exactly what intellectual property RDX actually owned—especially in light of Danzik's looting RDX's more-tangible assets.

47. Thus, in the alternative to the allegations above, upon information and belief, RDX maintained its ownership over the Magnet Intellectual Property through

-10-

2016—even though RDX never disclosed the Magnet Intellectual Property as an asset in its 2015 or 2017 bankruptcy cases (both of which were dismissed, along with three of Danzik's personal bankruptcy cases between 2015 and 2019).

48. Indeed, in a 2011 agreement between Danzik and RDX, Danzik agreed not to engage in any activities that competed with the intellectual property that RDX was holding. A copy of this agreement is attached as Exhibit K.

49. And during the time when he created the Magnet Intellectual Property, Danzik was a highly-paid RDX executive. Indeed, Danzik even caused RDX to pay a $1.5 million judgment that Danzik personally owed as part of Danzik's purported compensation.

50. Thus, any work Danzik was doing related to the development of energy-related intellectual property, including the Magnet Intellectual Property, between 2011 and 2014, was done solely on behalf of RDX, and not for Danzik personally.

51. According to its operating agreement, on September 2, 2016, Wyo Tech acquired the Magnet Intellectual Property—which Wyo Tech called the Danzik Asymmetrical Disk/Ring KE Inductance Engine. A copy of this operating agreement, which is publicly-available at docket number 160-8 in the Wyo Tech Interpleader Action, is attached as Exhibit L. It is not clear whether the acquisition referenced in Wyo Tech's operating agreement was the Danzik Release Agreement; while Wyo Tech's counsel claimed that it is, Wyo Tech's operating agreement refers to a September 2, 2016 agreement with DAS, while the Danzik Release Agreement is a September 22, 2016 agreement with Danzik.

52. Either way, in the alternative to the allegations above, Danzik caused RDX to transfer the Magnet Intellectual Property, either directly or using DAS or Danzik as an intermediary, to Wyo Tech for no consideration to RDX—which was insolvent at the

time.

### iii. Alternatively, DAS Owned the Magnet Intellectual Property

53. According to Wyo Tech's operating agreement, it acquired the Magnet Intellectual Property from DAS. Ex. L.

54. But even if Danzik purported to own the Magnet Intellectual Property through DAS, this was a sham, and the Magnet Intellectual Property was really owned by RDX.

55. Indeed, on April 18, 2011, DAS and RDX entered into a Development and Supply Agreement, a copy of which is attached as Exhibit M. Under this agreement, DAS agreed that all "ideas, inventions, improvements, discoveries, creations, designs, materials, works of authorship, trademarks, and other technology and rights (and any related improvements or modifications thereof), regardless of whether patentable, copyrightable, or otherwise protectable under any form of legal protection afforded to intellectual property" relating to DAS's research and development or equipment of which DAS, its employees, consultants, or subcontractors are "aware or becomes aware," that is "conceived or developed by DAS," its employees, consultants, or subcontractors within five years "shall be the **sole property**" of RDX. Ex. M §§ 8.5, 8.6 (emphasis added).

56. Since Danzik created the Magnet Intellectual Property in or around 2012, to the extent DAS purported to own the Magnet Intellectual Property, it was really owned by RDX. And as explained above, RDX did not receive any consideration for the transfer of the Magnet Intellectual Property to Wyo Tech, and RDX was insolvent at the time of the transfer.

57. Further, even though the CWT Parties do not have a judgment against DAS, in September 2016, they still had a claim against DAS (as they still do today). Specifically, as explained above, DAS—acting through Danzik—stole millions of dollars

of Tax Credits from RDX, and thus from the CWT Parties, by submitting bogus invoices to RDX and causing the transfer of the Tax Credits to DAS. This claim is part of a pending suit in this District.

58. DAS did not receive consideration for the transfer of the Magnet Intellectual Property to Wyo Tech either. And DAS was insolvent at the time of this transfer.

59. Thus, when Wyo Tech acquired it in September 2016, the Magnet Intellectual Property was owned by either (i) Danzik, or (ii) RDX, or (iii) DAS—all of which were insolvent (or made insolvent by the transfer), and none of which received reasonably-equivalent value in exchange for the transfer. There was no other possible owner of the Magnet Intellectual Property at the time of the transfer.

60. Wyo Tech knew that the Magnet Intellectual Property was owned by Danzik, or alternatively, RDX or DAS, and further knew that the CWT Parties had claims against all three of them, and further knew that the transfer was taking place for inadequate (indeed, no) consideration and that Danzik, RDX, and DAS were insolvent.

61. So regardless of which of Danzik or RDX or DAS owned the Magnet Intellectual Property in September 2016, the Magnet Intellectual Property was fraudulently transferred to Wyo Tech under A.R.S. § 44-1005.

**D.     Wyo Tech Licenses the Magnet Intellectual Property to Inductance**

62. After purportedly acquiring the Magnet Intellectual Property, Wyo Tech licensed it to Inductance. Indeed, according to its operating agreement, Wyo Tech would "perpetually license the design, construction and marketing" of the Magnet Intellectual Property through Inductance, which would have the "right and responsibility to construct sub-license agreements with Special Purposes Entities ('SPE') to rent, lease and sell" the Magnet Intellectual Property. And according Inductance's website, it is the "worldwide exclusive licensee" of the Magnet Intellectual Property and its "many applications in

industrial, commercial and consumers products."

63. Upon information and belief, Wyo Tech and Inductance are operated by the same people—indeed, Danzik and his cronies. And so Inductance—just like Wyo Tech—knew that the Magnet Intellectual Property was owned by Danzik, or alternatively, RDX or DAS, and further knew that the CWT Parties had claims against all three of them, and further knew that the transfer was taking place for inadequate (indeed, no) consideration and that Danzik, RDX, and DAS were insolvent.

**FIRST CAUSE OF ACTION**
**(Constructive Fraudulent Transfer**
**Under A.R.S. § 44-1005 Against Wyo Tech)**

64. RRC repeats the allegations above as if fully set forth again.

65. Danzik owned the Magnet Intellectual Property, and in September 2016, transferred it to Wyo Tech.

66. Alternatively, RDX owned the Magnet Intellectual Property, and in September 2016, Danzik caused RDX to transfer it to Wyo Tech.

67. Alternatively, DAS owned the Magnet Intellectual Property, and in September 2016, Danzik caused DAS to transfer it to Wyo Tech.

68. Danzik, RDX, and DAS were all insolvent at the time of the transfer, or became insolvent as a result of the transfer.

69. At the time of the transfer, the CWT Parties had claims against Danzik, RDX, and DAS, all of which arose before this transfer was made.

70. Neither Danzik, RDX, nor DAS received reasonably-equivalent value in exchange for the transfer.

71. As a result, RRC suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**(Constructive Fraudulent Transfer Under A.R.S. § 44-1005 Against Inductance)**

72. RRC repeats the allegations above as if fully set forth again.

73. Danzik owned the Magnet Intellectual Property, and in September 2016, transferred it to Wyo Tech.

74. Alternatively, RDX owned the Magnet Intellectual Property, and in September 2016, Danzik caused RDX to transfer it to Wyo Tech.

75. Alternatively, DAS owned the Magnet Intellectual Property, and in September 2016, Danzik caused DAS to transfer it to Wyo Tech.

76. Danzik, RDX, and DAS were all insolvent at the time of the transfer, or became insolvent as a result of the transfer.

77. At the time of the transfer, the CWT Parties had claims against Danzik, RDX, and DAS, all of which arose before this transfer was made.

78. Neither Danzik, RDX, nor DAS received reasonably-equivalent value in exchange for the transfer.

79. Wyo Tech licensed the Magnet Intellectual Property to Inductance.

80. Upon information and belief, Wyo Tech and Inductance are operated by the same people—indeed, Danzik and his cronies. And so Inductance—just like Wyo Tech—knew that the Magnet Intellectual Property was owned by Danzik, or alternatively, RDX or DAS, and further knew that the CWT Parties had claims against all three of them, and further knew that the transfer was taking place for inadequate (indeed, no) consideration and that Danzik, RDX, and DAS were insolvent.

81. Thus, Inductance is a subsequent transferee of the Magnet Intellectual Property, but is not a good-faith transferee that took for value.

82. As a result, RRC suffered damages in an amount to be determined at trial.

**WHEREFORE**, RRC respectfully requests that the Court enter judgment in its favor against Wyo Tech and Inductance on all of its causes of action, awarding it damages in an amount to be determined at trial, ownership of the fraudulently-transferred Magnet Intellectual Property to the extent of the CWT Parties' judgment amount, plus pre- and post-judgment interest, and attorneys' fees and costs of prosecuting its claims; garnishment against all fraudulent transfers; avoidance of all fraudulent transfers (including the transfer of the Magnet Intellectual Property to Wyo Tech and its leasing of it to Inductance); a constructive trust over, and disgorgement to RRC of, any funds or anything else of value that Wyo Tech or Inductance received through use of the fraudulently-transferred Magnet Intellectual Property, including but not limited to any proceeds from purported investors based on this technology; and all other appropriate remedies under A.R.S. § 44-1007.

Dated: September 23, 2019
      Phoenix, Arizona

Respectfully submitted,

**RYAN RAPP & UNDERWOOD, P.L.C.**

By:   /s/ Henk Taylor (016321)
       J. Henk Taylor (016321)
       3200 North Central Avenue, Suite 1600
       Phoenix, Arizona 85012
       Telephone: (602) 280-1000
       Facsimile: (602) 265-1495
       E-Mail: htaylor@rrulaw.com

**SCHLAM STONE & DOLAN LLP**

Jeffrey M. Eilender *(pro hac vice to be submitted)*
Bradley J. Nash *(pro hac vice to be submitted)*
Joshua Wurtzel *(pro hac vice to be submitted)*
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 34407677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Plaintiff Resource Recovery Corporation*