# EXHIBIT C

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: __JUSTICE SHIRLEY WERNER KORNREICH__ PART _54_
_____Justice_____

GEM

INDEX NO. _650841/2013_

- v -

MOTION DATE _3/28/16_

CWT

MOTION SEQ. NO. _17_

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 413-419, 426 |
| Answering Affidavits — Exhibits | 472-500 |
| Replying Affidavits | 511-523 |

Cross-Motion: ☐ Yes ☒ No

Upon the foregoing papers, it is ordered that this ~~motion~~

**MOTION IS DECIDED IN ACCORDANCE WITH ACCOMPANYING MEMORANDUM DECISION AND ORDER**

Dated: 6/3/16

J.S.C.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Check one: ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST   ☐ REFERENCE

☐ SUBMIT ORDER/ JUDG.   ☐ SETTLE ORDER/ JUDG.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 54
-----------------------------------------------------------------X
GEM HOLDCO, LLC and GEM VENTURES, LTD.,     Index No: 650841/2013

                   Plaintiffs,     **DECISION & ORDER**

      -against-

CHANGING WORLD TECHNOLOGIES, L.P,
CWT CANADA II LIMITED PARTNERSHIP,
RESOURCE RECOVERY CORPORATION, JEAN
NOELTING, RIDGELINE ENERGY SERVICES, INC.,
DENNIS DANZIK, DOUGLAS JOHNSON, and
KELLY SLEDZ,

                 Defendants.
-----------------------------------------------------------------X
SHIRLEY WERNER KORNREICH, J.:

The CWT Parties move by order to show cause (OSC) to hold the RDX Parties (Dennis Danzik and RDX Technologies, Inc.) in civil and criminal contempt for violating the court's orders dated March 18, 2015 (the Attachment Order) (Dkt. 358) and May 5, 2015 (the TRO) (Dkt. 426).[1] The RDX Parties oppose the motion. For the reasons that follow, the motion is granted and the court finds Danzik and RDX Technologies, Inc. to be in civil and criminal contempt.

I.     *Background & Relevant Procedural History*

The court assumes familiarity with this action, the details of which are extensively set forth in the court's numerous written decisions. Unless otherwise indicated, all defined terms have the same meaning as in the court's prior decisions.

---

[1] References to "Dkt." followed by a number refer to documents filed in this action in the New York State Courts Electronic Filing (NYSCEF) system.

1

The CWT Parties filed the instant motion on May 5, 2015.[2] The court signed the OSC along with another OSC filed by the RDX Parties' prior counsel (Frydman LLC), which sought leave to withdraw. The motion to be relieved was granted by order dated May 19, 2015.[3] *See* Dkt. 438. The RDX Parties were given a deadline of June 22, 2015 to respond to the contempt motion, and oral argument was scheduled for June 26, 2015. *See* Dkt. 426 at 2, 5. Pending a decision on the contempt motion, the court issued a TRO, which provides:

> (a) none of the RDX Parties are to receive (directly or indirectly) any funds or assets from RDX and neither they nor anyone acting in concert with or on behalf of the RDX Parties are to cause RDX to make any payments (directly or indirectly) to anyone except for salaries and benefits in the ordinary course (excluding any bonuses) to those persons actually employed at RDX as of the signing of this Order, and any other expenditures shall require court approval and; (b) the RDX Parties, and any entities they own or control, including without limitation Danzik Applied Sciences, LLC, shall not transfer, spend or otherwise dissipate any funds that they received directly or indirectly from RDX or any of its subsidiaries, including without limitation Changing World Technologies, L.P., and Renewable Environmental Solutions, LLC; (c) the RDX Parties shall take affirmative steps to preserve all discoverable records, and shall not destroy or abandon any paper or electronic records in their possession, custody or control ...

*See* Dkt. 426 at 4-5.

The RDX Parties did not respond to the contempt motion by June 22, 2015. Nonetheless, given the severity of the allegations and the relief at stake, including jail, the court, over the CWT Parties' objection, extended the opposition deadline to permit new counsel, Michael Finkelstein of Finkelstein & Feil P.C., to familiarize himself with the case. Oral argument was adjourned to July 31, 2015. *See* Dkt. 461. The RDX parties filed their opposition papers on July

---

[2] The instant motion also sought certain discovery. That prong of the motion was resolved by interim order dated May 18, 2015. *See* Dkt. 437.

[3] The court assumes familiarity with the numerous law firms that have represented the RDX Parties and the circumstances of their withdrawals.

2

24, 2015. After oral argument, the court scheduled a hearing for November 4, 2015. *See* Dkt. 526 (7/31/15 Tr.).[4]

The only witness that testified at the hearing was Candie Blazar, RDX's former CFO.[5] Her direct examination was conducted by counsel for the CWT Parties over a three day period, November 4, 5, and 6, 2015. *See* Dkt. 597 (11/4/14 Tr.); Dkt. 598 (11/5/15 Tr.); Dkt. 599 (11/6/15 Tr.). Cross-examination by counsel for the RDX Parties was scheduled to commence on January 5, 2016. However, the night before, on January 4, both Danzik (in Wyoming) and RDX (in Arizona) filed for bankruptcy, triggering the automatic stay, 11 USC § 362. For reasons set forth on the record, Mr. Finkelstein declined to cross-examine Ms. Blazar. The CWT Parties then introduced designated deposition testimony[6] into the record and rested. The RDX Parties did not call any witnesses. Danzik did not appear in court on January 5, nor did he or his counsel provide any legal authority to justify his failure to appear at a contempt hearing which could result in him being jailed. The RDX Parties' position that they were excused, without

---

[4] On November 4, 2015, prior to the contempt hearing, the court held oral argument on numerous dismissal motions, decided a portion of the motions from the bench, and addressed the remainder in an order dated February 1, 2016. *See* Dkt. 592. Motion 21, in which the CWT Parties seek a default judgment against the RDX Parties, and Motion 22, in which the GEM Parties seek to enforce their settlement agreement with the RDX Parties, are scheduled for oral argument on July 7, 2016.

[5] She was RDX's CFO from November 2014 to October 4, 2015. Prior to working for RDX, between August 2012 and November 2014, she worked for Renewable Environmental Solutions, a former subsidiary of CWT that was acquired by the RDX Parties in one the transactions at issue in this case.

[6] The CWT Parties designed deposition testimony of (1) David Bogardus, a former RDX employee, who previously signed an affidavit under pressure from Danzik, which falsely represented that Danzik had nothing to do with M2R (a newly formed alter ego of RDX, discussed herein); (2) David Kalscheur, a Vice President of Engineering at National Beef; and (3) Don Determann, another National Beef employee who reports to Kalscheur.

3

prior leave of court, from this contempt proceeding by virtue of the automatic stay is contrary to the weight of legal authority. Under the circumstances, the automatic stay did not deprive this court of its ability to compel compliance with its orders and hold the RDX Parties in contempt for past misconduct. *See In re Leonard*, 2014 WL 1025823, at *6-7 (Bankr ED Tenn Mar. 14, 2014) (explaining that contempt proceedings are excepted from the automatic stay), *aff'd sub nom. Leonard v RDLG, LLC*, 529 BR 239 (ED Tenn 2015) ("The district court was clear that the sanctions were entered to punish the appellant for his conduct and to protect the integrity of the court and the judicial process as opposed to adjudicating private rights. The record shows that the appellant sought to undermine the judicial process and delay his trial. It shows he acted in bad faith. He failed to comply with the court's order despite him having the money to pay the sanctions in his possession prior to filing for bankruptcy"), *aff'd sub nom. In re Leonard*, 2016 WL 1178649 (6th Cir Mar. 28, 2016), accord *Dominic's Rest. of Dayton, Inc. v Mantia*, 683 F3d 757, 761 (6th Cir 2012); *see also Alpern v Lieb*, 11 F3d 689, 690 (7th Cir 1993) (Posner, J.) ("A litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy. Allowing him to do so would not only increase the number of bankruptcy filings but also create incentives for unprofessional conduct in litigation by firms or individuals teetering on the edge of the bankruptcy abyss.").[7]

---

[7] It should be noted that some courts draw a distinction between state court contempt proceedings "based on nonpayment of a monetary sanction or some other behavior which violates a state court order," the former category being more likely to be stayed. *See In re Dingley*, 514 BR 591, 597 (BAP 9th Cir 2014); *see also In re White*, 478 BR 177, 183-84 (Bankr SDNY 2012) ("Courts have recognized a non-statutory exception to the automatic stay where the goal of a civil contempt proceeding is to vindicate the dignity of the court rather than collect a pre-petition claim or obtain property of the estate."). The RDX Parties never set forth arguments regarding this distinction and, instead, simply defaulted. It appears that the RDX Parties filed for bankruptcy to avoid the contempt hearing and sought to have this action adjudicated by another court. The bankruptcy court judges did not countenance this ploy. As discussed herein, the

4

## II. Legal Standard

"Civil contempt has as its aim the vindication of a private party to litigation and any sanction imposed upon the contemnor is designed to compensate the injured private party for the loss of or interference with the benefits of the mandate." *McCain v Dinkins*, 84 NY2d 216, 226 (1994), citing *McCormick v Axelrod*, 59 NY2d 574, 583 (1983). A defendant may be held in civil contempt when there is "clear and convincing evidence that defendant knowingly disobeyed clear and unequivocal orders of the court." *Simens v Darwish*, 104 AD3d 465, 466 (1st Dept 2013), citing *McCormick*, 59 NY2d at 582-83. A hearing is not required to hold a party in civil contempt when there is no question of fact that a court order was knowingly violated.[8] *See Yonamine v New York City Police Dep't*, 121 AD3d 598 (1st Dept 2014), citing *Cashman v Rosenthal*, 261 AD2d 287 (1st Dept 1999) ("Supreme Court properly held defendant in civil contempt without holding a hearing, since it was clear from the papers submitted to the court that there was no issue of fact to be resolved"); *see also Gryphon Domestic VI, LLC v APP Int'l Fin. Co.*, 58 AD3d 498, 499 (1st Dept 2009) ("To sustain a finding of civil contempt based on alleged violation of a court order, it is necessary to establish that a lawful order of the court was in effect, clearly expressing an unequivocal mandate. It must also appear with reasonable certainty that the order has been disobeyed and that the party had knowledge of its mandate").

---

automatic stay is no longer in effect and, as the Wyoming court held, the tax credit funds held by Danzik are not part of the bankruptcy estate. Moreover, despite all of his conduct to date, Danzik is still being given an opportunity to purge his contempt. It also should be noted that the court has no occasion to opine on what contempt remedies could have been issued while the automatic stay was in effect since that issue is moot.

[8] This proposition of law is relevant to any attempt by Danzik to argue that his failure to testify precludes a finding of contempt against him. As discussed earlier, while represented by counsel, he voluntarily decided not to appear based on the erroneous proposition that his bankruptcy filing excused his attendance.

5

Additionally, "[a]lthough the line between the civil and criminal contempt may be difficult to draw in a given case and the same act may be punishable as both a civil and a criminal contempt, the element which escalates a contempt to criminal status is the level of willfulness associated with the conduct." *McCain*, 84 NY2d at 226; *see Town of Southampton v R.K.B. Realty, LLC*, 91 AD3d 628, 629 (2d Dept 2012) ("The same act may be punishable as both a criminal and civil contempt"). That being said, the purposes of civil contempt and criminal contempt differ. Civil contempt "is designed not to punish but, rather, to compensate the injured private party or to coerce compliance with the court's mandate." *Dep't of Envtl. Protection of the City of New York v Dep't of Envtl Conservation of the State of New York*, 70 NY2d 233, 234 (1987). "A criminal contempt, on the other hand, involves an offense against judicial authority and is utilized to protect the integrity of the judicial process and to compel respect for its mandates." *Id.* "Unlike civil contempt, the aim in a criminal contempt proceeding **is solely to punish** the contemnor for disobeying a court order, the penalty imposed being punitive rather than compensatory." *Id.* (emphasis added). To hold a party in criminal contempt, a hearing must be held and a willful disobedience of a court order must be proved beyond a reasonable doubt. *Muraca v Meyerowitz*, 49 AD3d 697, 698 (2d Dept 2008), citing *County of Rockland v Civil Serv. Empls. Ass'n*, 62 NY2d 11, 16 (1984).

Pursuant to Judiciary Law § 751, a party held in criminal contempt can be jailed for up to 30 days or fined up to $1,000. In the case of civil contempt, Judiciary Law § 773 provides that the contemnor may be obligated to pay damages or a fine "sufficient to indemnify the aggrieved party" or, if actual losses are not established, "a fine may be imposed, not exceeding the amount of the complainant's costs and expenses, and [$250]." *See Gottlieb v Gottlieb*, 137 AD3d 614 (1st Dept 2016) ("Legal fees that constitute actual loss or injury as a result of a contempt are

6

routinely awarded as part of the fine. These may include the legal fees incurred in bringing the contempt motion") (internal citations omitted). Judiciary Law § 774 sets forth the term of imprisonment for civil contempt, which is dependent on whether the offender performed and the amount of the fine. *See People v Warden, Brooklyn House of Det.*, 305 AD2d 339, 340 (2d Dept 2003) ("Judiciary Law § 774 permits the imposition of a prison term and a fine where the offender does not have the power to perform the act or duty required to purge his contempt");[9] *see also Martinez v Martinez*, 44 AD3d 945, 947 (2d Dept 2007) (imprisonment for civil contempt should "only continue until such time as the offender, if it is within his or her power, complies with the [] order").

   *III.    Discussion*

   Based on Ms. Blazar's testimony and the extensive evidence submitted, there is no question that the RDX Parties willfully violated the Attachment Order and the TRO. Indeed, Danzik admits his noncompliance with the Attachment Order, and merely argues that his noncompliance should be excused on the ground of impossibility, i.e., he argues his supposed lack of money made it impossible to deposit the tax credit funds into a segregated account. Ms. Blazar's testimony established additional discovery violations (beyond those that resulted in the court striking the RDX Parties' pleadings) and other troubling business practices, such as backdating invoices; taking money from the company under the pretense of fake business expenses; and lying about not receiving compensation from the company when, in fact, his salary was being withheld and used to set off his debt to the company for paying his share of a settlement of an unrelated lawsuit. Danzik also coerced Ms. Blazar into submitting false

---

[9] If the tax credit funds were spent by Danzik after issuance of the Attachment Order, imprisonment may still be permissible.

7

affidavits and appears to have perjured himself before a Canadian bankruptcy court. All of this should shock the conscience, but given Danzik's conduct in this action, this court cannot genuinely profess surprise. The scope of possible remedies – monetary sanctions, costs and attorneys' fees, and possible jail time (and whatever consequences other governmental authorities may impose for the apparent illegal activity testified to by Ms. Blazar, i.e., perjury and financial fraud) – was somewhat uncertain while the automatic stay was in effect. That is no longer a concern because both bankruptcy court judges have lifted the automatic stay. *See* Dkt. 605 (4/7/16 Wyoming court order, lifting the stay in Danzik's bankruptcy, and holding [*see id.* at 7] that the subject tax credit funds received by Danzik are held in constructive trust and are not part of the bankruptcy estate); Dkt. 607 (4/26/16 Arizona hearing transcript, where the court lifted the stay in RDX's bankruptcy); Dkt. 609 (Arizona court's implementing order, holding that "all stays and injunctions to the extent applicable, are immediately modified to allow the continuation of all aspects of the New York Action, including but not limited to, entry of judgment and imposition of contempt remedies" but that the CWT Parties "are not entitled under this Order to seek or maintain any collection action against property of the Debtor's bankruptcy estate"); Dkt. 611 (minute entry noting dismissal of RDX's bankruptcy proceedings); Dkt. 613 (final order dismissing RDX's bankruptcy case).

Ms. Blazar established Danzik's contempt beyond a reasonable doubt. The court finds her to be a highly credible witness.[10] She testified that Danzik committed substantial financial

---

[10] While Ms. Blazar admittedly helped Danzik commit some of his prior bad acts, it is clear that she did so under extreme economic duress. While this is no excuse, Ms. Blazar's compensation is modest, and she is single mother that must provide for her children. And while it is true that Ms. Blazar has agreed to cooperate with the CWT Defendants, the court, after observing her extensive testimony over the course of three days, found her testimony consistent, forthright and in keeping with the other evidence in the case. The court finds her testimony to be truthful on

8

wrongdoing, much of which goes beyond the issues on this motion (such as serious discovery abuses).[11] While so many of Danzik's actions are problematic, only those actions constituting violations of this court's Attachment Order and TRO may be predicates for holding him in contempt. Hence, all of Danzik's actions prior to the issuance of the Attachment Order on March 18, 2015 are not considered by the court in deciding this motion.[12]

While the Attachment Order was indisputably violated, the only other basis for contempt is the course of conduct charted by Danzik in response to the TRO, which began on May 6, 2015, the day after the TRO was issued. Danzik formed a new alter ego of RDX, M2R Licensing, LLC (M2R), depleting RDX of the funds necessary to comply with the Attachment Order. After having deposited the tax credit funds into a new, secret Hometown Bank account, Danzik made sure to invoice all of RDX's clients with M2R invoices so revenue would be received by M2R instead of RDX. After the TRO was issued, Danzik had invoices for one of its customers, National Beef Corporation (National Beef), changed from that of RDX to M2R – *before* M2R was even formed. RDX then asserted it had no funds to comply with the Attachment Order.

---

almost all matters. Indeed, her frank and truthful testimony has been a refreshing departure from the obfuscation, mistrust, and deceit that has permeated this case.

[11] For instance, during the contempt hearing, additional egregious discovery violations came to light, such as Danzik's refusal to disclose bank records from Hometown Bank. This occurred while he was represented by Greenberg Traurig LLP, though nothing in the record suggests that firm was aware of this misconduct.

[12] The lone exception is Danzik's transfers of the tax credit funds to other bank accounts (including those belonging to his family members or their businesses) which, while not done in violation of a court order, does belie his contention that his contempt should be excused since he supposedly lacked the means to transfer the funds back into a segregated account. Even if this contempt motion was not brought, such transfers may well have led (and may still lead) to post-judgment fraudulent transfer proceedings.

9

Ms. Blazar's testimony exposed that excuse to be a fraud on the court. Ms. Blazar testified, and the evidence submitted proves, that M2R is a sham company that exists solely for the purpose of evading this court's orders and defrauding RDX's creditors. M2R has no assets or employees. It uses RDX's facilities and employees to produce the micro screens, but does not compensate RDX for this with any of the usual inter-company formalities. M2R is merely an alter ego of RDX, and, hence, any action taken by M2R that would constitute a violation of the TRO by RDX is grounds for contempt. Its assets are subject to the Attachment Order.

That said, even if Danzik never engaged in the scheme to use M2R to evade this court's restrictions on RDX, he would still be held in contempt. His sole proffered basis for not complying with the March 18, 2015 Attachment Order, which obligated him *personally* to put the tax credit funds into a segregated account, is that he lacked sufficient funds to do so. That was a lie. As Ms. Blazar explained, when the federal government sent RDX the tax credit funds, Danzik had her open and deposit the money in a new account at Hometown Bank. He then transferred funds to accounts belonging to himself, his family members and their businesses. That money was, at least in part, used to pay Danzik's personal expenses. Indeed, Ms. Blazar testified that the money transferred to the businesses did not correspond to actual RDX expenses. Ms. Blazar was not speculating. She was RDX's CFO and was privy to all of its financial information. Her candor and understanding of RDX's finances buttress her credibility.

Importantly, despite being ordered to produce all bank records evidencing the transfer of the tax credit funds, Danzik deliberately did not disclose the Hometown Bank records, nor did he even disclose the existence of that account. Ms. Blazar's testimony on this issue is clear: Danzik directed which records Ms. Blazar was to provide to counsel for the RDX Parties (Greenberg Traurig, LLP) to produce in discovery, and expressly instructed her not to disclose the

10

Hometown Bank statements. The CWT Parties, on their own, later discovered the Hometown Bank account through the use of third-party subpoenas. The CWT Parties apparently (and with good reason) did not believe Danzik provided complete and accurate responses to discovery orders. Danzik later attempted to hide this discovery violation by slipping some of the records into a later production, a tactic that demonstrates his deceptive intent. This discovery abuse, on its own, warrants sanctions. To wit, it was Danzik's repeated discovery violations, such as his continual refusal to timely provide ESI despite countless deadline extensions, which resulted in the striking of his pleadings. He is the epitome of a recalcitrant, contemptuous, and incorrigible litigant whose pleadings deserved to be stricken. *See Herman v Herman*, 134 AD3d 442 (1st Dept 2015) (defendant's "repeated noncompliance with the court's many discovery orders was dilatory, evasive, obstructive and ultimately contumacious. It prejudiced plaintiffs by impeding [their] ability to obtain true discovery and by forcing [them] to spend enormous amounts of money and time to prove [their] case, and was an unnecessary drain on limited court resources. [Defendant's] misconduct was not isolated, and he made little or no good faith attempt to correct it. A lesser sanction would not have deterred [his] continued discovery violations") (internal citations and quotation marks omitted), *aff'g* 2015 WL 4197882 (Sup Ct, NY County July 13, 2015).

The hearing evidence proved, beyond a reasonable doubt, and certainly by clear and convincing evidence, Danzik's willful disobedience of this court's orders. Nonetheless, Danzik will be given one final opportunity to purge his contempt. If he wishes to do so and avoid having to pay the CWT Parties' attorneys' fees incurred on this motion and an arrest warrant, he must immediately deposit the full amount of the tax credits received from the federal government into

11

court or into a segregated escrow account to be maintained by the CWT Parties' counsel.[13] There is no question of fact that the tax credit funds do not belong to the RDX Parties. *See* Attachment Order at 4 (explaining that "[t]he money "either belongs to the CWT Parties of the federal government"). The RDX Parties have admitted this. Ms. Blazar has proven that Daznik stole all of the money. Since the federal government is not seeking a refund of the tax credit funds and since there is no actively litigated claim against the CWT Parties (due to Danzik's defaults and apparent abandonment of the Canadian action), the CWT Parties are entitled to judgment and turnover of the tax credit funds. The court previously explained that, pursuant CPLR 6201, an attachment was appropriate because Danzik is an out-of-state defendant that appeared to be taking steps to frustrate the collection of a judgment by disposing of RDX's assets to related entities. *See* Attachment Order at 3-4. The events that have since transpired, such as the use of M2R as an alter ego of RDX, have validated this concern.

Danzik has a choice. He can remit the tax credit funds now so that a judgment against the RDX Parties can be satisfied, or he will be subject to civil and criminal penalties authorized by the CPLR. The bankruptcy stays no longer affect his ability to comply with this directive. RDX's bankruptcy action was dismissed, the stay was lifted in Danzik's personal bankruptcy

---

[13] Danzik has a number of options. He could use money currently in the bank accounts of RDX or M2R. Alternatively, since Ms. Blazar established the bank accounts in which the tax credit funds were deposited upon receipt from the federal government, and where such funds were later transferred, he could pay back the funds from his personal accounts. After all, aside from the issue of contempt, it seems clear that such funds, which indisputably were wrongfully withheld from the CWT Parties, may ultimately be disgorged because they were converted. As the Wyoming bankruptcy court noted [*see* Dkt. 605 at 7], Danzik merely holds these funds in a constructive trust, meaning they are not property of the bankruptcy estate, and thus should ultimately be recovered by the CWT Parties free and clear of other creditors' claims in the bankruptcy actions.

12

action in Wyoming, and the Wyoming bankruptcy judge held that the tax credit funds are not property of the bankruptcy estate.

To be sure, this court is not obligated to afford Danzik the opportunity to purge his contempt, and has seriously considered ordering him to serve a jail sentence to punish him for his egregious misconduct. *See People v Williamson*, 136 AD2d 497 (1st Dept 1988) (contemnor has no right to an opportunity to purge contempt). Such misconduct has severely undermined the integrity of this court and has caused the other parties in this case to waste an extraordinary amount of time and money. However, the remainder of this action and any subsequent enforcement proceedings are really all about the GEM and CWT Parties being paid what they are owed. It is all about money. Danzik purging his contempt would save the GEM and CWT Parties substantial time and money in a subsequent enforcement action. That would be an excellent way to see this lengthy, litigious action come closer to a fruitful end.

Danzik is cautioned that he should not view this olive branch as a sign that the court will tolerate further contumacious conduct, such as a claim that he lacks the means or legal authority to pay the money into court. The records produced and the testimony elicited refute such excuses. He shall comply with the specific directives set forth below – unequivocal conditional orders – or he will immediately be subject to the delineated remedies. Accordingly, it is

ORDERED that the CWT Parties' motion to hold the RDX Parties in contempt for their violation of the court's orders of March 18 and May 5, 2015 is conditionally granted to the extent set forth herein; and it is further

ORDERED that for the RDX Parties to purge their contempt, Danzik must strictly comply with the following directives: by June 15, 2016, at 4:00 p.m. (New York time), Danzik

13

must (1) pay the full amount of tax credit funds, which totaled approximately $6 million[14] into court or transfer the money to the CWT Parties' counsel, Jeffrey M. Eilender, to be held in a segregated escrow account pending further order of the court; and (2) e-file an affidavit of compliance along with proof that the full amount of tax credits RDX received from the federal government have been deposited into court or escrow; and it is further

ORDERED that unless the RDX Parties' contempt is purged in the manner set forth above, by June 21, 2016, the CWT Parties shall submit a proposed order for the arrest and imprisonment of Danzik and for the imposition of civil and criminal monetary penalties (if the CWT Parties seek attorneys' fees, the proposed order should provide for a reference to hear and report on reasonable counsel fees); and it is further

ORDERED that a telephone conference will be held on June 23, 2016 at 3:00 pm to discuss the status of the RDX Parties' contempt.

Dated: June 3, 2016                                ENTER:

                                                   _____
                                                           J.S.C.

---

[14] A portion of the funds in the Attachment Order, $3,175,967, was denominated in Canadian Dollars, and thus that portion was really only worth approximately $2.8 million.

14