# EXHIBIT I

## AGREEMENT TO RELEASE
## INTELLECTUAL PROPERTY RIGHTS

This Agreement effective September 22, 2016 ("Effective Date") is made by and between WYO Tech Investment Group, LLC ("Company") having an address at 30 N. Gould St. STE R, Sheridan, WY 82801 and the Contractor (as defined below).

WHEREAS Company owns all inventions or trade secrets, conceived and/or first reduced to practice by its employees or contractors in the course of fulfilling their employment or contractual duties and/or through the use of Company resources, or through development of intellectual property through contractual agreement, including the intellectual property or trade secret described below (hereinafter the "IP");

WHEREAS the Company has all rights in the IP; The Contractor has made no personal, corporate, or investment into the IP or the Company since its formation, and makes no claims whatsoever to the IP. The IP has not been commercialized, and has a value of zero as of the execution of this Agreement.

WHEREAS the Contractor is willing to release any and all rights he may have in the IP so that the Company can take it's IP to market under the Company control;

NOW THEREFORE, in consideration of the mutual covenants herein contained and other good and valuable consideration, the parties agree as follows:

## ARTICLE I - DEFINITIONS

1.1   "IP or IP" shall mean any patent pending, patented, or trade secret developed with Company resources and described herein.

1.2   "Contractor" shall mean the individual(s) determined to have made the inventive contribution to the IP. The Contractor is Dennis M. Danzik, of 1334 Sunset Blvd S, Cody, Wyoming 82414.

1.3   "Asymmetrical Engine" shall mean all related devices, systems, parts, services, engineering, or any form of commercialization of magnetic propulsion.

1.4   "Patents" shall mean all related forms, applications, legal drafts and other documentation required for Company to protect its IP.

1

## ARTICLE II-REPRESENTATIONS AND WARRANTIES

2.1    Contractor represents and warrants that Contractor has fully disclosed to the Company all relevant aspects of the IP that Contractor is aware of, and will continue to do so through a contractor or employment agreement to be executed in the future between the Contractor and the Company, no later than April 30, 2017. Contractor shall be entitled to collect from Company all expenses incurred prior to the execution of this Agreement. Full disclosure of the IP includes providing a detailed description of (i) the IP sufficient to allow someone skilled in the relevant field to make and use it, (ii) the utility of the IP, (iii) any known advantages the IP has over existing compositions or methods with the same or similar utility, (iv) any interest by the Contractor in forming a start-up company around the IP, and (v) any other aspects of the IP that may impact its value or marketability.

## ARTICLE III-VALUE

3.1    Company and Contractor acknowledge that the current value of the IP is zero. The IP has not been fully developed, tested or commercialized in any way and the risk of the IP development shall be solely that of the Company. Company shall hold harmless the Contractor for any failure of the Company to commercialize the IP.

## ARTICLE IV-RELEASE

4.1    Contractor herein agrees to assign any interest, and its rights in the IP to Company as of the Effective Date. Contractor herein assigns, and transfers any and all rights to the IP that Contractor may have had or may have developed in the future under the terms and conditions of this Agreement.

4.2    The Company shall have the sole right to protect the IP or its business rights in regards to the IP through its chosen legal representation. Contractors agrees to execute all documents, agreements, patent applications or other necessary for the Company to protect its exclusive interest in the IP.

4.3    The Contractor's participation in commercializing the IP is vital to the Company's business plans. The Company shall indemnify the Contractor from any legal proceeding wherein the Company believes that the Company's IP may be placed at risk or the Contractor's

2

## ARTICLE V- Contractor OBLIGATIONS

In exchange for the release of rights by the Contractor, the Company agrees to the following obligations.

5.1   As of the Effective Date, Company shall be responsible for the payment of all patent and other expenses associated with the IP incurred after the Effective Date.

5.2   Contractor agrees to assist in filing provisional U.S. patent applications covering the IP within twenty four (24) months of the Effective Date. If a provisional application covering the IP has already been filed by Company, Contractor agrees to assist to convert the provisional application to a regular U.S. application and/or international PCT application before expiration of the provisional application. If a regular U.S. application and/or international PCT application has been filed, Contractor agrees to assist to maintain patent rights in the U.S. for at least six (6) months from the Effective Date.

5.3   As of the Effective Date, Company shall be responsible for any continuing obligations to third parties who have an interest in the IP (e.g. funding sources, material providers, etc.).

5.4   Within thirty days of the anniversary of the Effective Date, Contractor shall provide an annual written report to Company summarizing progress during the preceding year toward commercialization of the IP, compliance with any funding source or material provider obligations and the status of any patent filings covering the IP. Company agrees to treat all nonpublic information in this report as confidential information.

5.5   Contractor's name or trade name shall be forever associated with the IP. Company agrees to execute a Trade Name Agreement ("TNA") with the Contractor on or before the one year anniversary date of this Agreement that will define the placement of Contractor's trade name on manufactured articles manufactured or licensed by the Company. It is herein agreed that such TNA shall allow at a minimum, no less than 5% (five percent) of any surface area, of any part, assembly, drawing, unit, engine, enclosure, advertisement, vehicle logo, or other surface associated with the IP, shall be reserved for use by the Contractor for his trade name.

5.7   Contractor agrees to assist Company in composing license agreements so that the Company can successfully launch the IP into the marketplace. Company will compensate Contractor for any time required by Company in the assistance of Contractor in the management of Company IP.

DANZIK_000219

5.8   Contractor shall have a fiduciary duty to Company to seek fair market value for the transfer of rights in the IP to a third party.

5.9   Company will indemnify, hold harmless, and defend Contractor against any claim of any kind arising out of or related to the exercise of any rights granted to Contractor under this Agreement or the breach of this Agreement by Company.

5.10   After the Effective Date Contractor agrees not to conduct any further research related to the IP on the premises of Company without the express written consent of the Company.

5.11   Contractor herein acknowledges that he has no interest in the Company or the IP as of the date of this Agreement. Contractor further acknowledges that Contractor is not entitled to any profits of the Company.

## ARTICLE VI-MISCELLANEOUS

6.1   Use of Name. Contractor shall not use the name, image or logo of the Company, or any adaptation thereof, in any advertising, promotional or sales literature without the prior written approval of the Company. Company shall not use the name, image or logo of the Contractor, or any adaptation thereof, in any advertising, promotional or sales literature without the prior written approval of the Contractor.

6.2   Termination. Neither Company nor the Contractor may not terminate this Agreement.

6.3   In the event that Contractor defaults at any time in the performance of any material covenant or condition contained herein, Company shall have the right to notify Contractor of such default and of Institution's intent to enforce its rights under this Agreement unless such default is corrected. Unless correction of such default shall have been undertaken within thirty (30) days from the receipt of notice, Company shall be entitled, by notice to Contractor in writing, to enforce this Agreement if default continues.

6.4   Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Wyoming irrespective of any conflicts of law principles.

DANZIK_000220

6.5     Notice. Any notices required or permitted under this Agreement shall be in writing, shall specifically refer to this Agreement, and shall be sent by hand, recognized national overnight courier, confirmed facsimile or electronic mail transmission, or registered or certified mail, postage prepaid, return receipt requested, to the following address or facsimile numbers of the parties:

If to Company:

Douglas C Bean
Managing Member
WYO Tech Investment Group, LLC
1220 Rockbottom Street
North Las Vegas, Nevada 89030

If to Contractor:

Dennis M. Danzik
1334 Sunset Blvd South
Cody, Wyoming 82414

6.6     All notices under this Agreement shall be deemed effective upon receipt. A party may change its contact information immediately upon written notice to the other party in the manner provided in this Section.

6.7     Entire Agreement. This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements or understandings between the parties relating to its subject matter.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives.

By: _____

Dennis M. Danzik
Contractor

By: _____

Douglas C. Bean
Managing Member
WYO Tech Investment Group, LLC

5